Good morning, Your Honors. Stephen Brody, Federal Defendant of San Diego, on behalf of Mr. Flores. Two significant procedural errors were committed at the sentencing hearing in this case. The one I want to talk about first was the Court's misuse of the cost of prosecution as a consideration in setting sentence for Mr. Flores. The law is very clear under Tapio Romero that the cost of incarceration is not an acceptable consideration under 35.38. Well, hasn't the government more or less conceded that the cost is not relevant, and didn't the judge say he was not considering it? Yeah, I don't think that there's any question about whether or not the cost is acceptable. The question of whether the judge actually considered it is a little bit more complicated. Why isn't his statement credible that he said, I'm not considering cost? He had blurted out something earlier in the procedure that sounded like he might be concerned about the taxpayers suffering from a lot of this traffic. But then he said, I'm not considering it. Aren't we entitled to take his word for it? I think at the point at which he says, I'm not going to consider it, we may in fact at that point be able to take his word for it. However, what you have here is the district court starting out very vehemently considering this improper factor, defense counsel saying, actually, you can't consider that. The court at that point, as Your Honor points out, says, I'm not going to consider it then in that case. You know, I'll carry on. But at that point then, the district court turns to the prosecutor and says, well, you know, what do you think about this? And the prosecutor says, you know, I'm not really sure I agree with defense counsel and sort of suggests, well, in fact, you can consider it. And at that point, the last word of the district court is, to the extent that defense counsel is right, I won't consider it. But to me, it just seems to be common sense. So his last word is, you know, look, this is common sense. And we can't look at that in isolation. In reviewing the transcript at pages 24 and 26, he first says, I accept your recommendation and not consider that then. And then there's more discussion. And then a second time he says, it doesn't make a lot of common sense to me, sort of struggling with the rule, and says, I am going to ignore completely the fact that this has a financial consequence, et cetera. A third time, a few lines later, this is after he asks the U.S. attorney what his position is. And the U.S. attorney sort of hunts. And he says, let me be explicit then. This is the court. To the extent Mr. Camden is right, I won't consider it. I haven't asked for the dollar figure, et cetera. So he really goes out of his way to make sure that that's not something that's going to enter into his conclusion. That's not how I read the record. Clearly, the district judge feels very strongly about this. Now, at the end, when he says, to the extent defense counsel is right, he has very reluctantly considered the possibility that defense counsel may in fact be right. But at the point at which the prosecutor allows him to sort of backtrack a little bit and muddies the waters, he's saying something, he's using this phrase, to the extent to which defense counsel is right, which I think can only be read as a sort of dismissive phrase. It's a way of saying, you know, I'm not entirely sure that you're right. I'm not sure I believe that. But, look, I'm just going to carry on here. This discussion is over. And then the final word is, this appears to me to be a common sense factor. So reading the record as a whole, you have a district court judge who clearly is very committed to this. Keep reading. He says, but it just seems to me to be common sense, this is at the bottom of 25, that it be a factor. But that said, I will keep that aside and look strictly, and he goes on, because what's really bothering him is that this defendant has reentered a number of times, and he's focusing on the deterrence of how to perhaps stop that from happening again. So he makes very clear, really, doesn't he, that I'm going to set that aside. I may not agree with that, but I'm not going to make that a part of my decision. I think at that point he's been quite clear that he doesn't think that defense counsel is correct. I think that, you know, he's going to set it aside to the extent that he thinks it shouldn't be applicable. He does appear to think it's applicable, and I think ultimately he does apply it. And your position is he's based on the transcript. It had to be a part of his reasoning, even if he tried to backtrack. That's correct. And I think if there's any ambiguity here, it does have to be resolved ultimately in favor of Mr. Flores, because the district court is required to lay a record that's sufficiently clear for the purposes of appellate review. And, you know, if we can't look at the record and say for certain, well, he did or he didn't consider it, then I think it's appropriate to remand. Counsel, are you arguing unreasonable, substantively unreasonable sentence, or are you emphasizing the procedural challenge? I'm emphasizing the procedural challenge, Your Honor, and that was the ground on which the matter was reversed in Tapio Romero for consideration of an improper factor. And if the court agrees that any ambiguity has to be resolved by remanding it, I think that would also be a procedural issue under Carty and Rita, that there wasn't sufficiently clear of the record. Speaking very briefly, then, to the other procedural error that took place, here you also have the court repeatedly referring to a prior sentence of 39 months that Mr. Flores-Cortez received. And that reflects, I think, a significant misunderstanding by the district court as to the nature of that 39 months. It was comprised of two separate sentences, a 15-month sentence for a violation of supervised release and a 24-month sentence for a new 1326 violation. And that's what he said on page 26. The district judge clearly said what you just said. He does say that, and he appears to be aware that the sentences were set in different cases, but he's treating for the purposes of this notion of incremental deterrence them as one sentence. And that's error insofar as we have very clear authority from McBell and from Puerta Pimentel, which says that, you know, these two kinds of sentences are for totally separate things. Am I not allowed, as a district judge in sentencing a defendant, to look at how much time he has spent in prison in determining what's an appropriate sentence this time? And if I want to deter what this judge clearly did, no dispute, he added up and said, you know, 24 and 15 didn't keep you out. I'm going to go to 40. Maybe that will keep you out next time. Is there something wrong with that? Well, setting aside the whole question about whether or not incremental deterrence. Yes. We can't go there. We don't have time. But there is something wrong with that. There's nothing wrong with that if the court is very explicit about what it's doing. If it says, look, you know, my position is that you received this total of 39 months. You probably experienced it as a single period of 39 months, and, you know, that, I have no doubt, you probably internalized as the punishment for the 1326, and now I'm going to go over and above it because nothing else will work. That, then, is a clean record that gives defense counsel an opportunity to address that argument, but that's not what took place here. What took place here was just repeated references to the 39-month sentence that was imposed last time around. None of the logic of what Your Honor is proposing was ever spoken to by the district court. And unless you have any more immediate questions for me, I would like to reserve the last two minutes.  Thank you, Your Honor. We'll hear from the government. Good morning, and may it please the Court, Sean Coyle on behalf of the Appellee United States of America. I'll take up that second prong of the argument first, that is the consideration of the two prior sentences which were imposed consecutively following the 2006 illegal entry by Mr. Flores-Cortez and totaling 39 months when run consecutively. This is a very limited claim of error. It's a claim of factual error, and the standard is that the factual findings below have to have been clearly erroneous, which means that they have to have been implausible or illogical. Not only were they not clearly erroneous, they were 100 percent accurate. Judge Burns reiterated and reiterated that he understood that one of these sentences was a 24-month sentence for a 2006 illegal entry conviction, and that the other was a 15-month sentence for a subsequent supervised release violation that arose out of the same illegal entry. He clearly understood the nature of these sentences. He didn't mischaracterize them, which is Mr. Flores-Cortez's very limited legal claim here before this panel. He characterized them correctly. Defense counsel below acknowledged that Judge Burns had read the record correctly, and there's nothing muddled about it or incoherent about it, nothing that left defense counsel below in a position where they couldn't object to this line of argument. In fact, at the end of the sentencing hearing below, and this is at page 28 of the excerpts of the record, defense counsel below said, I'm sorry, yes, at 28, defense counsel below raised the notion that these two sentences are imposed for different reasons. One is the substance offense, and the other is for the abuse of the court's trust in the supervised release proceedings. Judge Burns acknowledged that argument and said, look, I haven't taken the nature of the two sentences or the policy reasons behind them into consideration. I've simply made the common sense determination that the practical consequence of the 2006 illegal reentry was a sentence of 24 months followed by a sentence of 15 months imposed consecutively. And that's a permissible inquiry under 3553A. In fact, it's an inquiry that's called for under 3553A. The defendant's personal history and his characteristics are, of course, always relevant under 3553A. The defendant's personal history is that he has these prior convictions, and his personal characteristics are that those convictions didn't deter him from reentering the United States illegally. But the sentence for the last reentry violation was 24 months, not 39 months. That's correct, Your Honor. And I think Judge Burns here explicitly laid out what his thinking was in using that 39-month benchmark. As I said, there was nothing ambiguous in the record. There was nothing about Judge Burns' analysis that suggested he didn't understand what he was doing. He understood perfectly well what he was doing. And Mr. Flores-Cortez's argument here, as it has to be, is a very narrow legal claim for error, and that is that the judge's factual findings were clearly erroneous. Well, they weren't. They were 100% accurate. And so taken on its own terms, that argument has to fail. You were not arguing for an upward variance, were you? You wanted a high guideline sentence. That's correct, Your Honor. We argued for a sentence of 27 months below, which is the high end of the guideline range. Turning to the second argument, I'll just touch on this briefly because I think the panel covered most of what I would say in its questions to the appellant. There is no ambiguity in the way that Judge Burns laid out his thinking on the cost issue. He made some unfortunate comments, didn't he? Well, you know, I don't know that I'd characterize him that way. It was clear that Judge Burns didn't know about the Tapio Romero case, and defense counsel below to his credit raised the case to Judge Burns. He may have saved him from making another error. He likely did. Judge Burns obviously was unaware of the case and I think made what were some reasonable assumptions about some distinctions that maybe can be drawn between the kinds of costs that Judge Burns was about to consider or was considering in the Tapio Romero case. But even setting all that aside, the record is explicit in this regard. He turned to the AUSA, which in this case was me, and said, what do you know about Tapio Romero? And I didn't muddle the record or suggest to Judge Burns that Tapio Romero didn't exist or that it was wrong. All I said was I'm unaware of the case, but I do think it's crystal clear that the court can consider deterrence. And Judge Burns took that up and said, look, I don't know what the law is here, but I'll take your word for it, and then said, let me be explicit. I'm not going to consider that cost factor. And he reiterated that just a couple of lines later in the record. So the record with respect to Judge Burns' state of mind, at least as he has expressed it here, is crystal clear. He made it crystal clear that he was not going to be considering the cost factor. And the only way that this Court, frankly, could reverse on that ground would be to find that Judge Burns was misrepresenting his own state of mind. And I respectfully submit that when it comes to the matters of a district court's own state of mind, this Court ought to grant a district court judge absolute deference on that. And with that, I'd submit, unless the panel has any other questions. No further questions. Thank you, Counsel. Thank you, Your Honor. Mr. Brody, you have a little reserve time. Thank you. I want to address very quickly the question of whether or not this is the 39-month sentence issue is up on plain air. I don't think it is. There was an objection made at the time of sentencing. Defense counsel said during the course of discussion of whether or not this was an appropriate consideration or whether or not the sentence was procedurally sound, quote, the sentence he got last time reflected both the substantive punishment for coming in illegally and the breach of the Court's trust. And further, in discussing these procedural problems, that the reason for the upward variance is deterrence in this case, and when the Court imposes one sentence and he actually only serves a much lower sentence, then much less increase would be necessary. And this is, in effect, you know, arguing that the deterrence here can't be a function of an improper analysis of the sentence that Mr. Flores received last time around. So, first of all, I think even if it is, even if we're on plain air, there is plain air, because the factual finding or the consideration of the 39-month sentence prior is clearly erroneous and certainly affected Mr. Flores' substantial rights. You're not saying that a violation of supervised release in a sentence for that can't be considered by a judge in determining an appropriate sentence in a subsequent case, are you? No, I'm not saying that. I'm saying that where they are conflated as they were in this case and then used as the basis for jumping off point for a new sentence, that would be error. Again, also to repeat myself, if there were any question about whether the record is clear here, if it's ambiguous, then you don't have a satisfactory explanation for the reason the sentence was imposed and I think it would have to be remanded on those grounds. Very quickly, with respect to what Mr. Coyle said about having not muddled the record, it's a little bit tricky because he is the same counsel who was below and he, of course, knows what he was thinking, but strictly looking at the record, you have the prosecutor saying, right after this discussion has taken place, I do think it's clear under the guidelines the court is to consider deterrence of both of the defendant and those similarly situated and to me that speaks directly to deterring somebody by virtue of applying the consideration of the cost of prosecution. Thank you, counsel. The case just argued will be submitted for decision.
judges: Zouhary, Goodwin, O'Scannlain